IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-00038-WCM

JULIE LUANN LOVETT,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀MEMORANDUM OPINION
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀AND ORDER
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
COMMISSIONER OF THE SOCIAL⠀)
SECURITY ADMINISTRATION,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀)
_____)

⠀⠀⠀⠀This matter is before the Court on the parties' cross motions for summary judgment (Docs. 13, 15).[1]

## I.⠀⠀⠀Procedural Background

⠀⠀⠀⠀In June of 2018, Plaintiff Julie Luann Lovett ("Plaintiff") filed an application for disability insurance benefits. Transcript of the Administrative Record ("AR") 205-208. Plaintiff alleges disability beginning on March 19, 2018. AR 203-204.

⠀⠀⠀⠀On August 14, 2020, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued

_____

[1] The parties have consented to the disposition of this case by a United States Magistrate Judge. Doc. 11.

1

an unfavorable decision. AR 33-55. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "myofascial syndrome/fibromyalgia; spondylosis; radiculopathy; functional movement disorder, obesity, adjustment disorder with mixed anxiety and depressed mood; anxiety disorder; and conversion disorder with motor symptom or deficit." AR 39. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform medium work . . . except she is limited to work requiring occasional climbing of ladders and frequent but not constant overhead reaching with the bilateral upper extremities. She is able to perform unskilled work of a routine and repetitive nature in two-hour segments in a stable work environment at a pace controlled by the worker. The pace is non-automated, non-conveyor belt, non-assembly line, non-piece rate. She can have occasional interpersonal interaction with coworkers and supervisors and occasional public contact. Her concentration is greater than two-hour segments of an eight-hour workday.

AR 41.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 49-50.

2

### III. Plaintiff's Allegations of Error

Plaintiff contends that her RFC fails to account for certain functional limitations, and that the ALJ erred by failing to consider her past work history when evaluating her symptoms.[2]

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial

---

[2] Plaintiff initially also argued that this matter should be remanded because the Commissioner's decision was unconstitutional but she withdrew that argument in her reply. See Doc. 17.

evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Plaintiff's RFC

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. The Commissioner is responsible for determining the claimant's RFC based on all the relevant evidence. Johnson v. Barnhart, 434 F.3d 650 653 (4th Cir. 2005).

4

In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is required, however, to build "an accurate and logical bridge from the evidence to his conclusion" that a plaintiff's RFC sufficiently accounts for his or her limitations. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence").

Here, Plaintiff asserts that although the ALJ included limitations in her RFC that "minimally" address her functional movement disorder and conversion disorder, "far greater" limitations should have been included to account for her tremors, which prevent her from using her hands consistently and interfere with her concentration. Doc. 14 at 6; see also Doc. 14 at 17 (arguing that her RFC does not account for her inability to grip, lift, handle, finger; the "occasional tremors" she experiences in her lower extremity; and her panic attacks and severe anxiety "due to uncertainty over tremors").

Certain of the records relied upon by Plaintiff were explicitly referenced by the ALJ. Compare AR 46-47 (ALJ's citations to AR 412 (June 25, 2018 record reflecting Plaintiff's normal motor strength with times of "very fast resting tremor in her right hand and right leg," and that Plaintiff had "pretty good

5

stride and step height on gait exam"); AR 672 (November 9, 2018 record reflecting that deep tissue massage helped, and that Plaintiff was the caregiver for her daughter who has Prader-Willi syndrome); AR 773 (December 20, 2018 psychiatric evaluation reflecting that Plaintiff's short and long term memory was intact, her attention and concentration were adequate, her thought content was logical and goal directed, and she exhibited an average fund of knowledge, and that Plaintiff reported that a neurologist told her the tremor was a "physical presentation of her stress and anxiety"); AR 1301 (January 13, 2020 progress note wherein Plaintiff reported she was doing well on her medications, her tremors worsened when she was ill or stressed, and she needed "anxiety treated more than pain" and indicating that Plaintiff's exam reflected logical thinking, appropriate thought content, intact short and long term memory, and cognitive function within the normal range); AR 1413-1417 (July 13, 2020 report of psychological evaluation reflecting that although Plaintiff complained of a recent decline in her short term memory, she was able to adequately comprehend all questions and communicate well, that Plaintiff reported she had "major daily caretaking responsibilities" for one of her children and was also caring for a two-year-old under a kinship agreement, and indicating Plaintiff's full scale IQ)) with Doc. 14 at 17-18 (referencing these same records, among others).

Additionally, in developing Plaintiff's RFC, the ALJ relied on the opinions of the state agency consultants, Dr. Melvin Clayton (AR 84-86) and Dr. Todd Rowland (AR 102-106). These consultants determined that Plaintiff was able to work at the medium exertional level[3] but was limited to frequent bilateral overhead reaching. AR 85, 104. The ALJ explained that Dr. Clayton's and Dr. Rowland's opinions were consistent with records evidencing Plaintiff's full motor strength, tremors, mild disc disease of the mid thoracic spine, and "mild asymmetric right-sided disc/osteophyte protrusion at C3-C4 and C4-C5 with possibility of nerve root impingement." AR 46-47 (citing AR 397 (May 2, 2018 record reflecting 5/5 motor strength, normal tone and bulk, no resting tremor, normal gait, and that Plaintiff described "symptoms of being unable to grip, but these seem inconsistent"); AR 439 (October 5, 2018 record reflecting normal musculoskeletal strength); AR 412 (June 25, 2018 record); AR 668 (November 9, 2018 record); AR 372 (MRI report reflecting mild disc disease of the mid thoracic spine); AR 373 (MRI report showing mild asymmetric right-sided disc/osteophyte protrusion)).[4]

---

[3] "Medium" work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds[ ]" and "[i]n most medium jobs, being on one's feet for most of the workday is critical." SSR 83-10, 1983 WL 31251, at *6; see also 20 C.F.R. § 404.1567(c).

[4] Although the ALJ included limitations consistent with the opinions of Dr. Clayton and Dr. Rowland in Plaintiff's RFC, he included a further limitation to "occasional climbing of ladders" based on Plaintiff's tremors. AR 47.

Also, when considering Plaintiff's mental limitations, the ALJ found the opinion of Dr. Bonny Gregory, a state agency psychological consultant, persuasive. AR 47. Dr. Gregory determined that while "emotional factors and chronic pain could affect" Plaintiff's concentration and persistence, Plaintiff was able to concentrate and persist on simple, repetitive tasks; adapt to simple changes; and interact appropriately with others. AR 107. The ALJ explained that Dr. Gregory's opinion was consistent with medical evidence indicating that Plaintiff's short-term and long-term memory was intact, that she presented as cooperative and with appropriate affect, that her tremors worsened when stressed, and noted her full-scale IQ. AR 47 (citing AR 775 (December 20, 2018 psychiatric evaluation); AR 1301-1302 (January 13, 2020 progress note); AR 1361 (March 5, 2020 treatment note reflecting that Plaintiff was cooperative and exhibited an appropriate affect); AR 1414 & 1416 (July 13, 2020 psychological evaluation)).

Plaintiff argues that the ALJ's reliance on the opinions of Dr. Clayton, Dr. Rowland, and Dr. Gregory was improper because these consultants did not consider any of the "new evidence" that developed after they issued their opinions. Doc. 14 at 18. However, state agency consultants are not required to review the entire record before rendering their opinions, see Hunter v. Saul, No. 1:19CV912, 2020 WL 6582497 at *9 (M.D.N.C. Nov. 10, 2020), and an ALJ may rely on the opinions of state agency consultants when those opinions are

consistent with the evidence, including evidence that post-dates the opinions. See Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) ("'the testimony of a nonexamining physician can be relied upon when it is consistent with the record'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)); see also Thacker v. Astrue, No. 3:11CV246, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state agency physician did not have access to the entire evidentiary record — because the record was incomplete at the time of the assessment — is inconsequential as ... there is nothing in the additional medical evidence subsequently submitted by Plaintiff to indicate that she possessed limitations beyond [the state agency consultant's RFC]") (internal citation omitted), recommendation adopted, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012); Bracey v. Astrue, No. 5:07CV265, 2009 WL 86572, at *3 (E.D.N.C. Jan. 6, 2009) (finding no error in ALJ's reliance on state agency consultants' opinions where "treatment notes and clinical findings ... submitted after [their] assessments indicate[d] similar complaints and assessments as those [they] reviewed" and noting that the ALJ considered the additional evidence, which did "not demonstrate a marked change for the worse in [the] plaintiff's health").

Here, Plaintiff does not explain how later obtained evidence is contrary to the consultants' opinions, particularly where the ALJ considered much of this evidence when developing Plaintiff's RFC. See AR 46-47 (citing AR 1301

(January 13, 2020 progress note); AR 1415 (July 13, 2020 report of psychological evaluation); see also Doc. 14 at 17 (citing, in addition to certain records relied upon by the ALJ post-dating the state agency consultants' opinions, AR 1304 (February 21, 2020 progress note wherein Plaintiff indicated that her functional tremors are related to her stress levels); and AR 1430 (May 6, 2020 progress note reflecting Plaintiff had been "using walking, riding the golf cart, going to the beach as coping skills" for her anxiety)).

Finally, Plaintiff argues that the ALJ's reliance on some of Plaintiff's activities of daily living was improper because the ability to do these activities on a sporadic basis does not equate to the ability to work on a regular and continuous basis. The undersigned's review of the ALJ's decision, however, indicates that the ALJ did not rely solely on Plaintiff's reported activities of daily living in developing Plaintiff's RFC.[5]

---

[5] Plaintiff also argues that the ALJ "grossly overstated" her activities of daily living. Doc. 14 at 19. The ALJ, however, included specific citations supporting his recitation of Plaintiff's activities. See e.g. AR 42 (citing AR 239-246, AR 294-301, AR 305-312 (Adult Function Reports); AR 313 ("Report of Contact" indicating that Plaintiff reported that she had been watching a 19-month little girl "4 to 6 hours or maybe 8 a day," that she was feeling better "due to now [having] something to keep her busy," that she has "no problems" picking the child up, and that her tremor was gone when she was "busy with the child but will come back if she is stressed…"); AR 789 (Plaintiff shared that she was going to become a foster parent for a two-year-old girl)).

Under these circumstances, the undersigned is not left to guess as to the basis for the ALJ's findings and concludes that the ALJ supported his decisions regarding Plaintiff's RFC with substantial evidence.

### B. Plaintiff's Work History

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).[6] First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4.

20 C.F.R. § 404.1529(c)(3) sets forth numerous factors that an ALJ may consider when evaluating a claimant's symptoms, including a claimant's "prior work record," statements about the symptoms, evidence submitted by the claimant's medical sources, observations by others, the claimant's daily activities, and medication and other treatments. See also SSR 16-3p, 2016 WL 1119029. However, courts have held that an ALJ's failure to discuss a

---

[6] A "symptom" is "the individual's own description or statement of his or her physical or mental impairment(s)." See SSR 16-3p, 2016 WL 1119029, at *2.

plaintiff's work history specifically as part of a "credibility" analysis does not require remand when the ALJ relies on other permissible factors. See Propst v. Colvin, No. 1:16CV00082, 2016 WL 5107093, at *8 (M.D.N.C. Sept. 20, 2016); Maner v. Colvin, No. CA 1:12-2969-RBH, 2014 WL 4656383, at *5 (D.S.C. Sept. 17, 2014) ("while a long work history may be a factor supporting credibility, it is not controlling"); see also McKeithan v. Colvin, No. 1:14-CV-688, 2015 WL 4493132, at *6 (M.D.N.C. July 23, 2015) (holding that "[n]either the Fourth Circuit nor any court within it has recognized the so-called 'enhanced credibility doctrine'" in response to the claimant's argument "that her work history should automatically entitle her subjective complaints to substantial credibility"), adopted by 2015 WL 5178446 (M.D.N.C. Sept. 4, 2015); accord Clark v. Astrue, No. 3:12-CV-00122-MOC-DSC, 2012 WL 6728441, at *3 (W.D.N.C. Dec. 28, 2012) (same).

Here, although the ALJ did not discuss Plaintiff's work history, he did explain that Plaintiff's self-reported symptoms were inconsistent with her described daily activities as well as the "medical evidence and other evidence of record." AR 43 (citing documents indicating Plaintiff cares for children, including a daughter with a genetic disorder; can prepare meals, drive a car, shop, and handle money; has been walking, riding a golf cart, and going to the beach to cope with her anxiety; and discussing Plaintiff's medical records and relying on the opinions of the state agency consultants).

Accordingly, the undersigned is not persuaded that the ALJ's failure to discuss Plaintiff's work history requires remand.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED**, and the Commissioner's Motion for Summary Judgment (Doc. 15) is **GRANTED**.

The Clerk of Court is respectfully directed to enter a separate judgment in accordance with this Order, thereby closing the case.

Signed: August 31, 2022

W. Carleton Metcalf
United States Magistrate Judge